IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| OASIS INTERNATIONAL WATERS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   No. 10-707C ) (Judge Horn) |
| UNITED STATES, | ) ) |
| Defendant. | ) |

## JOINT STATEMENT OF UNCONTROVERTED FACT

**I.   Development of the Solicitation and Award of Contract**

   **A.   Background Facts**

   1.   Prior to award of Contract W27P4A-05-C-0002 (the "Contract"), the Army procured all of its bottled water for the U.S. troops in Iraq from Turkey, Kuwait, and Jordan under several Blanket Purchase Agreements ("BPAs") and shipped it by truck into Iraq.  (US 00004430 – 4526.)  The Army continued to procure bottled water under the same and other BPAs during performance of the Contract.  (*Id*.)

   2.   When requesting funding to produce bottled water, local commanders noted attacks on convoys delivering bottled water from other countries:

> 1. PROBLEM. In order to reduce the number [of] soldiers and trucks subject to hostile attacks while conducting sustainment convoys, MNC-I [Multi National Corps-Iraq] has identified the requirement to produce bottled water within the Iraqi area of operations (IAO).  1st COSCOM has determined bottled water capability should be established at each of the four enduring General Support (GS) hubs and selected sustainment sites.

JA 316 (Memorandum dated March 2, 2005, from Colonel Herman T. Palmer, USA to "Commander, MNCI, ATTN: Joint Acquisition Review Board SUBJECT: Letter of Justification for In-Country Bottled Water").

3. 1st COSCOM was the 1st Corps Support Command at Logistical Support Area Anaconda, Iraq, and served as the "customer" for, and the primary agency behind, the procurement that led to the Contract. (JA319).

4. The Army, through 1st COSCOM, in requesting funding for the contract in early 2005, also produced an independent government cost estimate ("IGCE") for the establishment and operation of eight bottled water facilities in Iraq. (JA 269 – 308) The IGCE contained spreadsheets totaling $149,145,894.32 for the Base Year for all locations. (*Id.*).

### B. Request For Information

5. In early 2005, while the Army was seeking funding for the contract via a Purchase Request and Commitment ("PR&C") Form (JA 320) and had generated the IGCE, Major Mauricio Vazquez, a contracting officer at Joint Contracting Command-Iraq (JCC-I) at Camp Victory, Baghdad, was beginning the process of developing a solicitation for the contract.

6. The Army's PR&C form (DA Form 3953), used to officially request funding for a particular procurement action, stated: "Request to provide bottled water service to sites listed below based on requirements identified in the attached Statement of Work." (JA 320) The PR&C lists a total cost for the eight plants of $149,145,894.32, *i.e.,* the same amount as the IGCE. (*Id.*)

7. As part of that process, Maj. Vazquez also issued a request for information (RFI) on March 2, 2005, and amendments thereto on March 2, 3, 4, and 7, 2005.  (JA 154 – 59.)

8. The original synopsis, as issued (JA 154 – 56.), and an amendment thereto (JA 157-59), were titled "Construction of re-locatable water purifying and bottling facilities".

9. Maj. Vazquez answered questions received in response to the RFI.  (JA 160 – 71.)

**C.** **Solicitation**

10. Maj. Vazquez issued Solicitation No. W27P4A-05-C-0002 on April 3, 2005, calling for a "negotiated procurement" with responses due no later than May 3, 2005.  (JA 425 – 514.)

11. The Federal Business Opportunities solicitation notice, titled Purified Bottled Water Service, was issued on April 3, 2005.  (JA 421.)

12. On the same date, Maj. Vazquez posted a Federal Business Opportunities solicitation notice.  (JA 511 – 14.)

13. Maj. Vazquez issued 11 amendments to the solicitation between April 3, 2005, and April 29, 2005.  (JA 515 – 26.)

**D.** **Pre-Award Questions**

14. Maj. Vazquez answered pre-award questions of prospective bidders.  (JA 527 – 51.)

### E. AquaSource's Response to the Solicitation and the Government's Review

15. AquaSource responded to the Solicitation on or about May 2, 2005. (JA 614 – 15)

16. On May 4, 2005, Major General Gerald P. Minetti, signed the Source Selection Plan as the source selection authority for Solicitation No. W27P4A-05-R-0002, titled "Purified Bottled Water Services." (JA 616.) .

17. Between May 8, and May 12, 2005, Maj. Vazquez and W. Maxwell Wyeth, the president of American AquaSource, Inc. (AAS) "clarified" AAS's proposal in response to the Solicitation. (JA 653-76.) a result of the "clarifications", AAS modified a previously provided spreadsheet attached to an email showing $608,000,000 to $386,225,000. (JA 654; JA 667.)

18. AAS submitted revisions to, and missing pages of, its proposal on May 11, 2005, which Maj. Vazquez incorporated into AAS's proposal. (JA 666-73.)

19. A document produced by the Government titled "Abstract of Offers" listed each offeror's "Price Proposal." (JA 677.) AAS's "Price Proposal" was listed as $386,225,000.

20. On May 12, 2005, Maj. Vazquez signed the Memorandum for Contract Folder Re: Technical Evaluations with the technical evaluations attached. (JA 678 – 99.) On that same day, Major Vazquez signed his Memorandum for Contract Folder Re: Fair and Reasonable Determination. (JA 700.)

21. On May 16, 2005, Major General Gerald P. Minetti, signed the Source Selection Decision Document as the source selection authority for Solicitation No. W27P4A-05-R-0002, titled "Purified Bottled Water Services." (JA 715.)

22. The Source Selection Decision Document stated that "American Aqua Source's price was 12 bottles for $3.50 equating to .292 per liter in every range for a Grand Total estimated amount of $386,225,000.00," and further recommended awarding contract no. W27P4A-05-C-0002 to AquaSource. (JA 725.)

23. The Source Selection Decision Document also stated that AquaSource's "Basis of Estimated indicated all pertinent costs associated with the per-liter cost, equipment amortization and depreciation, supplies, employees and profit. Their price proposal was the only one in line with the Independent Government Estimate (IGE) [IGCE] for this project. All other proposals exceeded substantially the IGE." (JA 725.)

24. On May 17, 2005, Maj. Vazquez signed a Memorandum for HQ Department of the Army – DASA Re: Congressional Notification with the attached Congressional notification form to be used. The notification stated that the "Type of Contract" was "Firm Fixed Price" and stated, under "ITEM (QTY) OR SERVICE PROCURED", "The Contractor shall provide all labor, tools, supervision, personnel, equipment, transportation, materials, facilities, and other essentials necessary to perform and sustain 8 separate and independent purified bottled water plants." (JA 753.) The Congressional Notification also notified Congress of a "BASE YEAR AWARD: $50,225,000.00 . . . [and] TOTAL IF ALL OPTIONS EXERCISE: $386,225,000.00." *Id*.

   **F.   Contract Award**

25. On May 25, 2005, the Army awarded the Contract (W27P4A-05-C-0002) to AAS. (JA 1 – 40.)

**II.   The Language of the Contract As Awarded**

26. In awarding the Contract, JCC-I reasoned that "[p]roducing bottled water locally would significantly reduce the number of convoys required to transport water as well as reduce the likelihood of battle related injuries."  (JA 8 – 9, introduction to "SECTION C - DESCRIPTIONS AND SPECIFICATIONS".)

27. Maj Vazquez wrote, in Block 20 of the Standard Form 33, "$386,225,000.00 (Estimated)."

28. The Base Year was to run from May 25, 2005 to May 24, 2006.  JA 3.

29. The CLINS 0001, 1001, 2001, and 3001 state, "NON-PERSONAL SERVICES:  The contractor shall . . . ."  (JA 3 – 6)

30. The Contract contains in full text or incorporates by reference the following clauses:

- 52.212-4 Contract Terms and Conditions-Commercial Items (JA 26-31)
- 52.216-1 Type of Contract (Apr 1984)
- 52.232.239-6  Taxes–Foreign Fixed-Price Contracts  (JUN 2003) (JA 23)
- 52.246-4  Inspection of Services – Fixed Price  (AUG 1996) (JA 23)
- 52.249-8  Default (Fixed-Price Supply & Service) (APR 1984) (JA 23)
- 52.243-1  Changes – Fixed-Price (Aug 1987) (JA 35).

31. The Standard Form ("SF") 33 cover sheet contains the following Contract No. W27P4A-05-C-0002.

32. "SECTION B - SUPPLIES OR SERVICES AND PRICES" of the contract contained the "schedule of supplies/services".  (JA 3 – 6.)

33. The "schedule of supplies/services" stated for CLIN0001 ("contract line item") that, during the base year, "[t]he Contractor shall provide all labor, tools, supervision, personnel, equipment, transportation, materials, facilities, and other essentials necessary to perform and sustain 8 separate and independent purified bottle water plants . . . .  Period of Performance: 25 May 05 through 24 May 06."  (JA 3.)

34. There was no price set against CLIN0001 in the schedule of supplies/services.

35. The first CLIN for each subsequent one-year option period was identical to that for the base period, with the exception of the dates of performance. (JA 4, CLIN1001 - first option period; JA 5, CLIN2001 - second option period; and JA 6, CLIN3001 - third option period).

36. As with CLIN0001, there was no price set against CLIN0002, CLIN0003, or CLIN0004 in the "schedule of supplies/services." (JA 4 – 6.)

37. Each sub-CLIN, *e.g*., CLIN1001AA, provided the "UNIT PRICE" of "$3.50/case (.292 ea [liter])" for "[p]urified bottled water" from each of the facilities during the base period and option periods. (JA 3 – 6.) There is no dollar amount include in the far right-hand "Amount" column of the CLINs and sub-CLINS.

38. Section B's "SUMMARY OF PRICING SCHEDULE," JA 7, provided the following:

**SUMMARY OF PRICES FOR BASE YEAR AND THREE OPTION YEARS**

**TOTAL BASE YEAR**           $50,225,000.00
**FIRST OPTION YEAR**         $112,000,000.00
**SECOND OPTION YEAR**        $112,000,000.00
**THIRD OPTION YEAR**         $112,000,000.00

**GRAND TOTAL (Base Year and Three Option Years)**   $386,225,000.00

**NOTE 1**: COMPLETE UNIT PRICES AND TOTAL AMOUNTS.  TOTAL MUST BE EXACT.  DO NOT ROUND OFF.

**NOTE 2**: IN CASE OF VARIATION BETWEEN THE UNIT PRICE AND THE EXTENDED PRICE, UNIT PRICE WILL BE CONSIDERED THE OFFER.

39. The Contract's "SECTION F – DELIVERIES OR PERFORMANCE"

contained "N/A" in the quantity column for each numbered CLIN and contained no sub-CLINs, *e.g*., CLIN0001AA. (JA 19.)

    40.    The invoicing clause was FAR 52.212-4(g)(1)(iii). This clause required the contractor to identify the contract number and CLIN for which it was seeking payment, as well as provide a "[d]escription, quantity, unit of measure, unit price and extended price of the items delivered." (JA 27.)

    41.    The contract at section G, "contract administration," also directed that "Invoicing shall occur monthly. The contractor shall invoice to the Contracting Officer Representative (COR), by the 5th of each month, for the total of all liters produced, per location, for the entire previous month. . . ." (JA 20.)

    42.    The payments clause was FAR 52.212-4(i)(1), which required that "Payments shall occur monthly. The Company/Contractor Contract Administrator (CCA) will be notified by the CO when all invoices and DD250s are accepted and correct for payment for the month of so indicated." (JA 20.)

    43.    The "Scope and Purpose" of the contract, JA 8, which was contained in section C ("Descriptions and Specifications") stated that:

> The purpose of this contract is to provide re-locatable purified bottled water capabilities at various locations throughout Iraq Area of Operations (AO). Contractor shall produce the amounts of bottled water as outlined in Figure 1. Contractor shall ensure bottled water capability is able to relocate upon notification by the Contracting Officer (CO) due to military operational requirements. Bottled water capabilities shall be established in the order as listed in Figure 1. Actual locations will be given to the contractor that wins award. The contractor shall provide all the mechanical equipment required to produce and prepare for shipment the required amounts of bottled water. The first bottled water site shall be operational 120 days after the contract is awarded. This includes military inspection and

>acceptance. After contract award, additional bottled water sites shall be established within the remainder of days from contract award. A full 365 days from contract award, all sites will be fully operational.
>
>3.2 The contractor shall ensure purified bottled water capability is able to relocate upon notification by the CO.
>
>3.3 The contractor shall provide own power generation to operate the bottled water capability. . . .
>
>4.1 The contractor shall provide re-locatable purified water bottling capability for producing and packaging required amounts of one liter bottles of water per day as outlined in Figure 1. Contractor personnel shall operate and maintain the site.
>
>6.2 The first purified bottled water capability will be operational no later than (NLT) 120 days after the contract is awarded.
>
>6.3 Remaining purified bottled water capabilities will be established within 365 days after the contract is awarded.
>
>7.5.1 Contractor shall operate the purified bottled water capabilities with enough personnel to meet the Government's requirements.

44. Figure 1 of the contract's "STATEMENT OF OBJECTIVES," JA 8 – 9, contained the following table identifying seasonal production ranges:

| LOCATION | TOTAL PRODUCTION REQUIREMENT/DAY in 1K Liters (winter/summer/surge) |
|---|---|
| Location 1 | 75-100K liters / 101-150K liters / 151-200K liters |
| Location 2 | 65-100K liters / 101-135K liters / 136-170K liters |
| Location 3 | 35-55K liters / 56-75K liters / 76-100K liters |
| Location 4 | 60-110K liters / 111-160K liters / 161-210K liters |
| Location 5 | 60-110K liters / 111-160K liters / 161-210K liters |

| Location 6 | 200-300K liters / 301-400K liters / 401-450K liters |
| --- | --- |
| Location 7 | 80-120K liters / 121-160K liters / 161-200K liters |
| Location 8 | 75-110K liters / 111-150K liters / 151-190K liters |

45. The contract identified the winter months as October through March and the summer months to be April through September. (JA 8.)

46. The contract also notified the contractor that there would be "Surge capacity of eight (8) one-liter bottles per person, per day during a surge (*surge capacity production with a 15 day notice and extent of surge through date*)." (JA 8; *italics* in original.) The duration of any "surge" or all "surges" was not included in the Solicitation or Contract.

47. Section C, at "**4.0 TASKS**", **JA 9,** provided that

> 4.1 The contractor shall provide re-locatable purified water bottling capability for producing and packaging required amounts of one liter bottles of water per day as outlined in Figure 1. Contractor personnel shall operate and maintain the site

48. Section C, at "**6.0 TIMELINE:**", **JA 10**, provided that

> 6.1 The contractor shall provide a detailed schedule with at a minimum of these factors:
>
> 6.1.1 Procurement and/or manufacturing of equipment and supplies.
> 6.1.2 Shipping of procured and/or manufactured equipment and supplies.
> 6.1.3 Movement into AO of equipment, supplies, and personnel.
> 6.1.4 Set up and testing of equipment.
> 6.1.5 First article testing / retest by Contractor.
> 6.1.6 First article testing / retest by Government (preventive medicine and veterinary service).
> 6.1.7 One (1) case production run for first article evaluation by the Government
> 6.2 The first purified bottled water capability will be operational no later than (NLT) 120 days after the contract is awarded.

> 6.3 Remaining purified bottled water capabilities will be established within 365 days after the contract is awarded.

49. On May 25, 2005, Mr. Wyeth signed the SF33 contract cover sheet as "President" of AquaSource, acknowledging that he had received 11 amendments to the solicitation and 145 pre-award questions. (JA 877 – 78.)

### III. Contract Modifications

50. The United States and AAS (and, with and after Modification P00005, Oasis) executed 13 contract modifications (both unilateral and bilateral) between May 26, 2005, and October 28, 2006. (JA 41 – 145.)

51. P00001, dated May 26, 2005, reduced the number of plants required from eight to six. (JA 41 – 54.)

52. On July 15, 2005, Major Marc Lopez, USAF, the third contracting officer, unilaterally executed modification P00002, which stated that "Award Section, Block 20 'Amount' is changed from: $ 386,225,000.00 (Estimated) to: $ 50,225,000.00 (NTE) Only the base year award should have been documented on the contract." (JA 55.)

53. On August 9, 2005, Maj. Lopez and Mr. Wyeth executed modification P00003. (JA 56 – 73.) This modification stated that:

> Section B "Supplies or Services and Prices" CLIN structure is changed to reflect Not to Exceed (NTE) quantities at each of the six locations, for the base year and each option year.
>
> The quantity NTE at each location is based on American AquaSource's proposal and the estimated government requirement at each location. The dollar value of the base year and options did not change. The CLIN structure is modified to provide for efficient contract administration.

(JA 57.)

54. The United States executed unilateral modification P00004 on September 18, 2005, which stated:

> 1. Statement of Work, Section 6.2 After, "The first purified bottled water capability will be operational no later than (NLT)" change from, "120 days after the contract is awarded." change to 4 October 2005.
>
> 2. In consideration of the modification agreed to herein as complete equitable adjustments for the Contractor's request for a time extension, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the extension of time.

JA74.

55. On December 5, 2005, Major Brandon Montler, USAF, the fourth contracting officer, and Mr. Wyeth executed modification P00005, which stated that "The purpose of this modification is to reflect the novation agreement transferring al rights and responsibilities of contract W27P4A-05-C-0002 from American Aqua Source, Inc. to Oasis International Water Inc in accordance with the attached novation agreement dated August 1, 2005."  (JA 75.)

56. The "novation agreement" referenced in modification P00005 was signed by Oasis and AquaSource on October 5, 2005. (JA 76-79),

57. The parties executed modification P00006 on April 14, 2006, JA 80-84, which stated that "The purpose of this modification is to extend base year period of performance, realign Contract Options, replace Figure 1 -Total Production Requirement/Day, change the payment office, and extend the preliminary notification and notice of intent under FAR clause 52.217-9." (JA 80.)

58. Major James E. Davis, the fifth contracting officer, signed modification P00006 and Phil Morrell signed on behalf of Oasis. (JA 80.)

59. The Government unilaterally executed modification P00007 on April 18, 2006, stating that "The purpose of this modification is to correct the line of accounting depicted in block 21 of the Standard Form 33 to read as follows: 2142220.0000 762084 P135197.0000 258A 83 7QAD W912R050641004 7QAD 83 S09076." (JA 85.)

60. P00008 incorporated FAR clauses prohibiting human trafficking, inhumane living conditions and withholding of employee passports. (JA 86 – 88.)

61. On June 13, 2006, Lieutenant Colonel Richardson, USAF, the sixth contracting officer, unilaterally executed modification P00009, which stated that "The purpose of this modification is to exercise the option for Contract Line Item Number 0002. The contract completion date is extended from 15 August 2006 to 15 January 2007. The contract amount and contract funded amount is increased by $50,000,000.00 from $50,225,000.00 to $100,225,000.00." (JA 89.)

62. P00009 was dated August 13, 2006. *Id*.

63. On June 28, 2006, Lt. Col. Richardson unilaterally executed modification P00010, which stated that "The purpose of this modification is to correct clerical errors found in blocks 3 and 16C of modification P00009. Blocks 3 and 16C of P00009 read as 13 August 2006. This modification corrects the dates of Block 3 and 16C to read as 13 June 2006." (JA 90.)

64. On August 12, 2006, the parties executed P00011 (JA 91 – 126), the stated purpose of which was as follows:

>1. Provide a revised CLIN structure to reflect monthly pricing based upon water production capability.
>
>2. Replace the Contract Statement of Objectives, with Performance Work Statement, dated 12 August 2006, provided as Attachment 1 to this modification.
>
>3. Incorporate the contractor's Quality Assurance Plan into the contract provided as Attachment 2 to this modification.
>
>4. Incorporate the List of Critical Equipment into the contract, provided as Attachment 3 to this modification.
>
>5. Insert Special Clause, titled "Equipment Leased by the Government", into the Contract.
>
>6. Insert clause DFARS 252.232-7007, "Limitation of Government's Obligation" (May 2006) into the Contract.
>
>7. Replace Contract Section J, List of Documents, Exhibits and Other Attachments.
>
>8. Decrease the contract amount by $11,604,166.45 from $386,225,000.00 to $374,620,833.55.
>
>9. Decrease the contract funded amount by $5,604,166.35 from $100,225,000.00 to $94,620,833.65.
>
>10. Change the end date of Option 4 from 16 August 2009 to 16 July 2009.

JA0092.

65. In August and September 2006, Lt. Col. Richardson drafted a memorandum for record regarding P00011.  (JA 930 – 42.)

66. Pursuant to P00011, the United States paid Oasis $24,542,387 in addition to the more than $23 million it had already paid on a per-case basis.

67. P00011 provided that the Government would pay Oasis a lump sum of $9.33M per month every month through the remainder of the Contract term in return for

the following: "The contractor shall provide, operate, maintain facilities, equipment, and supplies to provide the following water production capabilities per day . . . ." (JA 99.)

### IV.     Oasis's Claim

68.    On June 20, 2008, Oasis submitted its certified claim to the contracting officer.

### V.      The Contracting Officer's Final Decision

69.    On October 18, 2009, the then-Contracting Officer, Major Kevin Hobbs, USAF, issued the Contracting Officer's Final Decision at issue in this case. (JA 1258 – 63.)

|  |  |
|---|---|
|  | Respectfully submitted, |
| LAURENCE SCHOR<br>Asmar, Schor & McKenna, PLLC<br>5335 Wisconsin Ave, NW, Suite 400<br>Washington, D.C. 20015<br>Tel.:  (202) 244-4264<br>Fax:   (202) 686-3567<br><br>Attorneys for Plaintiff | STUART F. DELERY<br>Acting Assistant Attorney General<br><br>JEANNE E. DAVIDSON<br>Director<br><br>DONALD E. KINNER<br>Assistant Director<br><br>STEPHEN C. TOSINI<br>Senior Trial Counsel<br>Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, D.C., 20044<br>Tel: (202) 616-5196<br>Fax: (202) 514-7969 |
| September 26, 2012 | Attorneys for Defendant |

## **CERTIFICATE OF FILING**

   I hereby certify that on the 26th day of September 2012, a copy of the foregoing "JOINT STATEMENT OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

            s/Laurence Schor