UNITED STATES COURT OF FEDERAL CLAIMS

_____

OASIS INTERNATIONAL WATERS, INC.,   )
   )
        Plaintiff,   )
   )
        v.   )      Case No. 10-707C
   )      (Judge Horn)
THE UNITED STATES OF AMERICA,   )
   )
        Defendant.   )
_____)

**PLAINTIFF'S FILING PROVIDING THE RELATIONSHIP BETWEEN INFERENCES REQUESTED AS A RESULT OF DEFENDANT'S SPOLIATION AND VARIOUS ISSUES IN THE CASE**

Plaintiff, Oasis International Waters, Inc. ("Oasis"), pursuant to the Court's August 21, 2015 Order, herein submits the following filing identifying how the inferences previously requested by Oasis relate to the spoliation allegations raised by Oasis and discussing the effect that decisions the Court may reach on various issues in the case would have on those requested inferences.

**I.    RELATIONSHIP BETWEEN EACH INSTANCE OF SPOLIATION AND THE INFERENCES REQUESTED**

1.    If the Court finds that the Government committed spoliation by failing to preserve the Iraq.Centcom.mil emails between the Contracting Officers ("COs"), their JCC-I superiors, and the Customer ("COSCOM"), in which they discussed the Contract, contract type, and early modifications to the Contract, Oasis believes the following inferences are warranted for the reasons described on pages 37-39 of Oasis' opening spoliation brief[1]:

_____

[1] Doc. 463 at 37-39.

**Inference #1**: [The destroyed emails would have shown that] the Government intended to award a services contract.

**Inference #2**: [The destroyed emails would have shown that] the Government intended to award a contract for capability, not for water.

**Inference #3**: [The destroyed emails would have shown that] the Government drafted P00003 for the purpose of converting the contract to a commodity contract for the purchase of bottled water.

**Inference #4**: [The destroyed emails would have shown that] individuals within Joint Contracting Command – Iraq (JCC-I) believed that Oasis was entitled to $50,225,000 Base Year Firm Fixed Price payment in exchange for establishing the water-bottling capability, with no requirement to produce water.

2. If the Court finds that the Government committed spoliation by failing to preserve the Iraq.Centcom.mil emails between the COs, COSCOM, the Contracting Officer Representatives ("CORs") and the Mayor cells, in which they discussed Base Year construction, delays to construction, sources of drinking water for the troops, and the Government's decision to provide all necessary site improvements at some (but not all) plant locations, Oasis believes the following inferences are warranted for the reasons described on pages 39-40 of Oasis' opening spoliation brief[2]:

**Inference #5**: [The destroyed email] communications with the base Mayors would have supported Oasis' entitlement to site improvements at Government cost.

**Inference #6**: [The destroyed emails would have shown that] the Government issued P00006 solely for the purpose of resolving its own funding issues.

3. If the Court finds that the Government committed spoliation by failing to preserve the Iraq.Centcom.mil emails of the COs, in which they reviewed Oasis' Claim, Oasis

---

[2] Id at 39-40.

believes the following inferences are warranted for the reasons described on pages 40-43

of Oasis' opening spoliation brief[3]:

> **Inference #7**: The emails destroyed discussing the compressed schedule for letting
> and awarding the Contract would have supported Oasis' interpretation that no water
> was required in the Base Year.

> **Inference #8**: The emails destroyed would have supported the reasonableness of
> Oasis' interpretation of the Contract.

4. If the Court finds that the Government committed spoliation by failing to preserve the

Iraq.Centcom.mil emails of MG Scott[4], who was in charge of all contracting, and would

have discussed the Contract with the COs, the Contract extension, and the military's

continued use of outside water sources throughout the Base Period of the Contract, Oasis

believes the following inferences are warranted for the reasons described on pages 43-44

of Oasis' opening spoliation brief[5]:

> **Inference #9**: General Scott's emails should have supported Oasis claim that COL
> Richardson was directed by her superiors to extract concessions from Oasis in
> exchange for P00011.

> **Inference #10**: [General Scott's destroyed emails would have shown that] the
> Government knew Oasis would have no choice but to accept modifications P00006
> and P00011.

> **Inference #11:** [General Scott's destroyed emails would have shown that]
> Contracting Officers were directed by their superiors to issue P00006 and P00011 that
> changed the Contract structure to Oasis' detriment.

5. If the Court finds that the Government committed spoliation by failing to preserve Dean

Carsello's handwritten documents (including his Risk Analysis) as well as his emails and

---

[3] Id at 40-43.
[4] The Government ultimately produced some of MG Scott's PCO-Iraq.net email after Oasis paid
for these emails to be restored from backup tapes in 2013-2014.
[5] Id at 43-44.

other documents on the never-produced "SATX" email account and second work laptop[6], which related to his review of the Claim and his counseling of the COs who wrote the final decision and concluded that the Base Year included no water production requirement, Oasis believes the following inferences are warranted for the reasons described on pages 44-46 of Oasis' opening spoliation brief[7]:

> **Inference #12**: Dean Carsello's Risk Analysis and contributing documents supported Oasis' entitlement to Counts 5 and 6.

> **Inference #13**: Dean Carsello's Risk Analysis and contributing documents showed that Oasis was never paid for the site improvements claimed for in Count 6.

> **Inference #14**: Dean Carsello's Risk Analysis and contributing documents supported the reasonableness of Oasis' claim theory.

6. If the Court finds that the Government committed spoliation by failing to preserve the admittedly destroyed PCO tapes and servers, which would have included the same type of information that was on the destroyed Iraq.Centcom.Mil email accounts of the COs, CORs, COSCOM, and JCC-I superiors, Oasis believes the following inferences are warranted for the reasons described on pages 47-51 of Oasis' opening spoliation brief[8]:

> **Inference #4[9]**: [The destroyed emails would have shown that] individuals within Joint Contracting Command – Iraq (JCC-I) believed that Oasis was entitled to $50,225,000 Base Year Firm Fixed Price payment in exchange for establishing the water-bottling capability, with no requirement to produce water.

> **Inference #6**: [The destroyed emails would have shown that] the Government issued P00006 solely for the purpose of resolving its own funding issues.

---

[6] This laptop is separate from the personal computer that Dean Carsello used to conduct work business and which was forensically searched in 2013.

[7] Id at 44-46.

[8] Id at 47-51.

[9] In its initial brief, Oasis mistakenly listed this requested inference twice on its original list of inferences requested, at #4 and #15. Id at vii – viii.

7.  If the Court finds that the Government committed spoliation by failing to preserve Col.

Richardson's never-produced complete collection of Iraq.Centcom.mil emails, which she

had in San Antonio, TX as of 2009, and which would have discussed what led her to

conclude this was not a $3.50 per case contract as well as her issues with MG Scott

related to this Contract, Oasis believes the following inferences are warranted for the

reasons described on pages 52-57 of Oasis' opening spoliation brief[10]:

> **Inference # 16**: COL Richardson's documents would have supported Oasis'
> contractual interpretation that this Contract originally was a capability contract, and
> that Oasis was due $50.225M for the base year without regard to water produced
> and/or delivered.
>
> **Inference #17:** COL Richardson's emails to, from and discussing MG Scott would
> have supported Oasis' claim that she was directed by her superiors to extract
> concessions from Oasis in exchange for P00011.

8.  If the Court finds that the Government committed spoliation by failing to preserve Major

Rhone's handwritten notes, which would have discussed his review of the Claim, Oasis

believes the following inference is warranted for the reasons described on pages 57-58 of

Oasis' opening spoliation brief[11]:

> **Inference #18**: MAJ Rhone's contemporaneously taken notes during discussions with
> Oasis about the Claim would support Oasis' subjective belief in the validity of the
> Claim and objective reasonableness of Oasis' interpretation.

9.  If the Court finds that the Government committed spoliation by failing to preserve the

COR files, which would have discussed the base year construction/delay issues, Oasis

believes the following inference is warranted for the reasons described on pages 58-59 of

Oasis' opening spoliation brief[12]:

---

[10] Id at 52-57.
[11] Id at 57-58.
[12] Id at 58-59.

**Inference #19**: The documents in the COR files would have supported Oasis' position that but for Government-caused delays, Oasis would have completed all six (6) plants within the original base year.

## II.   RELATIONSHIP BETWEEN INSTANCES OF SPOLIATION AND COSTS REQUESTED

1. As a result of the protracted discovery in which Oasis was required to participate because of Defendant's failure to preserve the evidence described above, Oasis believes that it is appropriate for the Court to shift costs to Defendant (in addition to granting the inferences requested above).  But for Defendant's failure to preserve that documentation, discovery in this case would have concluded much earlier than it did, and Oasis believes those costs are properly borne by Defendant.  Oasis believes it is entitled to its discovery costs related to this matter beginning in July 2012 when, upon Oasis' notice of production deficiencies, Defendant finally produced the Contract File, after claiming for more than a year to have already produced it.[13]

2. Separately, Oasis believes that it is entitled to be awarded costs because of the large amount of additional work it was required to perform and the direct discovery costs it incurred, which were solely necessitated by Defendant's repeated delays and intransigence in working with Oasis to produce responsive documents.  Defendant was under a regulatory and common law obligation to keep these documents and, had it performed its discovery obligations, should have been able to easily determine their status and produce them.  Defendant's pervasive discovery failings justify shifting costs for the production of documents from the following sources:

---

[13] Doc. 72-1 at 2-3.

    a.  The PCO system, including the 1,500 backup tapes from which Oasis (at its own cost) retrieved the plurality of Defendant's production.[14]  Oasis discussed these additional costs at pages 46-47 of its opening spoliation brief.[15]

    b.  The documents of Dean Carsello that were produced from his forensically-searched personal computer (which he used for work purposes).[16]  Oasis discussed these additional costs at pages 31-34 of its opening spoliation brief.[17]

3. Pursuant to the Court's direction on the last day of trial (September 5, 2014), should the Court determine that Oasis is entitled to certain costs, Oasis will first attempt to resolve the amount of the costs with counsel for Defendant, and, if that effort is unsuccessful, will then submit its requested damages to the Court.[18]

## III.   RELATIONSHIP BETWEEN INFERENCES REQUESTED AND CONTRACT INTERPRETATION

1. Contract Interpretation – FFP Compensation (Inference #s 1, 2, 3, 4, 7, and 16).

    a.  If the Court determines that the terms of the Contract regarding Oasis' entitlement to payment are unambiguous and that Oasis' interpretation is correct, then inferences 1, 2, 3, 4, 7, and 16 are moot for all purposes because they are inferences regarding destroyed extrinsic evidence as to the payment Oasis was entitled to receive under the terms of the Contract.

    b.  If the Court determines that the terms of the Contract regarding Oasis' entitlement to payment are unambiguous and that Oasis' interpretation is not correct:

---

[14] As described above in the inferences section, Oasis is separately requesting an inference for PCO tapes and servers that were destroyed by Roger Burgess or never retained by Defendant.

[15] Doc. 463 at 46-47.

[16] As described above in the inferences section, Oasis is separately requesting an inference for the "SATX" email account, work laptop, and handwritten notes/documents Mr. Carsello destroyed and from which responsive documents were never produced.

[17] Id at 31-34.

[18] Doc. 464-1.

    i.   Inferences 1, 2, 3, 4, 7, and 16 are moot for the issue of contract interpretation *only* because they are inferences regarding destroyed extrinsic evidence as to the payment requirements of the Contract.

    ii.   Inferences 1, 2, 3, 4, 7, and 16 are *not* moot for the issue of fraud. Defendant has alleged that Oasis' interpretation is so unreasonable that it must be fraudulent.[19]  Inferences related to extrinsic evidence of the purpose of the Contract and the Government's understanding of the Contract are relevant in determining whether Oasis' interpretation was reasonable even if the terms themselves are unambiguous.

c.   If the Court determines that the Contract terms regarding Oasis' entitlement to payment are ambiguous, then Oasis believes inferences # 1, 2, 3, 4, 7, and 16 are directly relevant in the following ways:

    i.   Inferences 1, 2, 3, and 16 support Oasis' argument that, unlike prior Government BPAs whose purpose was to procure bottled water, this contract was intended to be different and instead procure a capability service where payment was not tied to the delivery of water.[20]

    ii.   Inference 4 supports Oasis' argument regarding the parties' contemporaneous understanding of the Contract.

    iii.   Inferences 7 and 16 supports Oasis' argument that payment was not tied to the delivery of water because, if no water was required in the Base Year, Oasis had to have been entitled to the $50,225,000 Firm-Fixed-Price solely for establishing the capability.  Further, these inferences support

---

[19] See, e.g., Doc. 476 at 57.
[20] Doc. 482 at 102-105.

Oasis' entitlement to $3.50 per case of water sold in the Base Year, as any other interpretation would require Oasis' to have volunteered.[21]

2. Contract Interpretation – Land Condition (Inference #5).[22]

   a. If the Court determines that the Contract is unambiguous on the issue of the condition of the land that needed to be provided to Oasis, then inference 5 is moot.

   b. If the Court determines that the Contract is ambiguous on the issue of the condition of the land that needed to be provided to Oasis, then Oasis believes that inference 5 is directly relevant to Oasis' entitlement to site improvements because the communications between the COs and the base Mayors, where the Government agreed to perform all site improvements at some (but not all) of the locations, would have been proof of the contemporaneous understanding that Oasis was entitled to those improvements and/or ratification of Oasis' entitlement.

3. Contract Interpretation – Counts 5 and 6 (Inference #12):

   a. If the Court determines that Defendant was allowed to provide Oasis with land that was unsuitable for the purpose intended, then inference 12 will be moot.

   b. If the Court determines that Defendant was required to provide Oasis with flat land sites suitable for establishment of water purification plants, then Oasis believes that inference 12 is directly relevant to demonstrating the validity of Counts 5 and 6.

---

[21] Id at 98-101.

[22] When asked about which inferences related to contract interpretation during Closing Arguments, Counsel for Oasis did not identify Inferences 5 and 12. However, after reviewing the issue in detail, Oasis believes these issues relate to contract interpretation as well as the issues of duress (5) and fraud (12) which were previously identified.

## IV.   RELATIONSHIP BETWEEN INFERENCES REQUESTED AND DURESS

1.  Duress (Inference #s 5, 6, 9, 10, 11, 17, and 19).

    a.  The applicability of these inferences will not be affected by other legal rulings reached by the Court.

    b.  Inference 5 supports Oasis' argument that Defendant provided Oasis' with sites that did not meet the Contract requirements, which was a contributing factor to the duress Oasis faced during the Base Year because it imposed additional costs and performance time on Oasis that Oasis could not afford and shrunk the time period to make water Defendant was insisting Oasis make in order to receive payment.

    c.  Inferences 6 and 19 support Oasis' argument that the extension of the Base Year in P00006 was solely to the benefit of Defendant.

    d.  Inferences 9, 10, 11, and 17 support Oasis' argument that the Government intended to extract concessions from Oasis through P00006 and P00011, which it knew Oasis would have no choice but to accept.

## V.   RELATIONSHIP BETWEEN INFERENCES REQUESTED AND ALLEGED FRAUD

1.  If the Court determines that Oasis' interpretation of the Contract is correct, it need not consider any of the inferences that solely relate to the issue of whether Oasis' interpretation is fraudulent (Inferences 8, 14, and 18) because a correct interpretation cannot be fraudulent.

2.  Fraud – Defendant's allegation[23] that Oasis' interpretation is so frivolous that Oasis could not have believed it to be true.

---

[23] See, e.g., Doc. 476 at 57.

a. If the Court determines that Oasis disclosed its interpretation to the Government[24] sufficiently early under Commercial Contractors to avoid any potential liability under this theory of fraud, then inferences 8, 14, and 18 (as it relates to the objective reasonableness of Oasis' Claim) would be rendered moot, as they relate to the reasonableness of Oasis' interpretation. In addition, inferences 1, 2, 3, 4, 7, and 16 relate to extrinsic evidence of the purpose of the Contract and Defendant's understanding of the Contract, and would be rendered moot for the purposes of fraud only. See Section III 1 b ii, *supra*.

b. If the Court finds that Oasis did not disclose its interpretation sufficiently early under Commercial Contractors, then Oasis requests that inferences 1, 2, 3, 4, 7, 8, 14, 16, and 18 be considered in evaluating the reasonableness of Oasis' interpretation.

3. Fraud – Defendant's allegation[25] that Oasis did not believe in its interpretation of the Claim.

a. If the Court adopts the logic of Safeco Ins. Co. of Am. v. Burr [26], and finds that a reasonable contractual interpretation cannot as a matter of law be fraudulent, inference 18 would be moot as it relates to Oasis' subjective intent.

---

[24] The parties disagree at what point a contractor is required to disclose its interpretation under Commercial Contractors, 154 F.3d 1357, 1366 (Fed. Cir. 1998). Doc. 476 at 88 (Defendant arguing that the interpretation must be disclosed "at the time of the relevant events"); doc. 482 at 212-214; doc. 492 at 186-187 (Oasis arguing that the interpretation need only be disclosed on the face of the Claim). Regardless, Oasis believes it sufficiently disclosed its interpretation under either interpretation of that case. Doc. 492 at 186-189.

[25] See, e.g., Doc. 476 at 95.

[26] Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).

     b.   If the Court does not adopt the logic of <u>Safeco Ins. Co. of Am. v. Burr</u>[27], then inference 18 directly rebuts Defendant's allegation that Oasis did not believe in its Claim interpretation.

4.   Fraud – Defendant's allegation[28] that Oasis has already been paid for the costs requested in Count 6.

     a.   Inference 13 directly rebuts Defendant's allegation that Oasis had already been paid this amount.

     b.   Inference 12 directly rebuts Defendant's allegation that Oasis should not have claimed the Count 6 costs in any event.

## VI.   RELATIONSHIP BETWEEN COSTS REQUESTED AND POTENTIAL COURT RULINGS

1.   Oasis' requests for costs as described in Section II, supra, are unaffected by any potential rulings they Court may issue with regard to contract interpretation, duress, or fraud, as Oasis believes these costs are properly borne by Defendant for its failure to produce and/or delay in producing documents that it was obligated to preserve and produce, regardless of whether those documents are ultimately considered by the Court in evaluating the case.

## VII.   RELATIONSHIP BETWEEN INFERENCES REQUESTED AND WITNESSES WHO TESTIFIED

1.   Oasis believes that the fact that certain witnesses (i.e., Col. Richardson, Lt. Col. Davis, and Maj. Vazquez) testified at trial should have no impact on Oasis' requested inferences regarding their destroyed documents.  Rather than alleviating potential prejudice, the testimony of witnesses at trial can compound the prejudice to opposing parties, as the witnesses can testify without the check of impeachment by previously written

---

[27] <u>Id.</u>
[28] Doc. 476 at 100-101.

documents.  That is why Judges before this Court have actually precluded witnesses from testifying in cases where their documents were not preserved. See K-Con Bldg. Sys., Inc. v. United States, 106 Fed. Cl. 652, 668 (2012) (excluding a witness's testimony at trial which was based to an unknown extent on the destroyed documents); Multiservice Jt. Venture, LLC v. United States, 85 Fed. Cl. 106, 114 (2008) aff'd, 374 Fed. Appx. 963 (Fed. Cir. 2010) (unpublished) (where spoliation concerned handwritten notes by plaintiff's witness made to a document during a deposition, the court barred plaintiff's witness from testifying on behalf of the plaintiff because the court was "convinced that [the witness] knew what had happened to the document, but declined to say what he knew.").  Oasis is not asking for that remedy in this case but, rather, arguing that the hostile testimony of opposing witnesses cannot serve as a salve for Defendant's failure to preserve evidence.

2. Oasis further believes that the testimony of a witness whose documents are not preserved is inherently less credible, because it has not been validated by a fair opportunity to cross examine because documents were improperly destroyed or not preserved.  If the Court believes that Oasis is entitled to one or more inferences, the fact that Defendant's witnesses appeared at trial should have no effect on that determination.

Respectfully submitted,


September 4, 2015                    /s/ LAURENCE SCHOR
                                    Asmar, Schor & McKenna, PLLC
                                    5335 Wisconsin Ave, NW
                                    Suite 400
                                    Washington, DC  20015
                                    (202) 244-4264
                                    (202) 686-3567 (facsimile)
                                    lschor@asm-law.com
                                    *Counsel of Record for Oasis International Waters,*
                                    *Inc.*


Of Counsel
Susan L. Schor (sschor@asm-law.com)
Dennis C. Ehlers (dehlers@asm-law.com)
David A. Edelstein (dedelstein@asm-law.com)
Robert D. Pratt (rpratt@asm-law.com)
Allison G. Geewax (ageewax@asm-law.com)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave, NW
Suite 400
Washington, DC  20015
(202) 244-4264
(202) 686-3567 (facsimile)

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on the 4th day of September, 2015, a copy of the foregoing PLAINTIFF'S FILING PROVIDING THE RELATIONSHIP BETWEEN INFERENCES REQUESTED AS A RESULT OF DEFENDANT' S SPOLIATION AND VARIOUS ISSUES IN THE CASE was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/Laurence Schor</u>